| | |
|---|---|
| STATE OF MINNESOTA | Case Type: Personal Injury<br>DISTRICT COURT |
| COUNTY OF STEARNS | SEVENTH JUDICIAL DISTRICT |

Nicholas Terhune,

      Plaintiff,

vs.                                                  **SUMMONS**

Home Depot U.S.A., Inc., and
Owens Corning Insulating Systems, LLC,

      Defendants.

---

THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANTS.

1.     **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2.     **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at: Rinke Noonan, Ltd., 1015 West St. Germain Street, Suite 300, P.O. Box 1497, St. Cloud, MN 56302-1497.

3.     **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.     **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.     **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

**EXHIBIT A**

6.      **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: December 17, 2021

                                                RINKE NOONAN, LTD.

                                                */s/ Tonya Hinkemeyer*
                                                Tonya T. Hinkemeyer (#0312113)
                                                Suite 300 US Bank Plaza Building
                                                1015 W. St. Germain St.
                                                P.O. Box 1497
                                                St. Cloud, MN  56302-1497
                                                (320) 251-6700
                                                (320) 656-3500 fax
                                                Email: Thinkemeyer@RinkeNoonan.com

                                                ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| STATE OF MINNESOTA | Case Type: Personal Injury<br>DISTRICT COURT |
| COUNTY OF STEARNS | SEVENTH JUDICIAL DISTRICT |

Nicholas Terhune,

      Plaintiff,

vs.

Home Depot U.S.A., Inc., and
Owens Corning Insulating Systems, LLC,

      Defendants.

**AMENDED COMPLAINT**

Plaintiff, Nicholas Terhune, by and through his undersigned attorney, for his cause of action and Complaint against Defendants, Home Depot U.S.A., Inc. and Owens Corning Insulating Systems, LLC, states and alleges as follows:

## PARTIES

1. Plaintiff, Nicholas Terhune, is a United States citizen and resident of Minnesota, residing at 3113 Dolores Drive, St. Cloud, Minnesota 56303.

2. Upon information and belief, Defendant, Home Depot U.S.A., Inc. (hereinafter "Home Depot") is a corporation headquartered in Atlanta, Georgia at 2455 Paces Ferry Rd SE, Atlanta, Georgia 30339. Defendant, Home Depot, maintains a store in Waite Park, Minnesota which is open to the public to sell and rent consumer products. This store is located at 401 Second Street South, Waite Park, Minnesota 56387.

3. Upon information and belief, Defendant, Owens Corning Insulating Systems, LLC, (hereinafter "Owens Corning"), is a company headquartered in Toledo, Ohio at One Owens Corning Parkway, Toledo, Ohio 43659. Owens Corning manufactures, sells and

distributes products to other distributors including, but not limited to, Home Depot in Waite Park, Minnesota.

## FACTUAL BACKGROUND

4.      On October 25, 2020, at 3:45 p.m. Plaintiff and his father, Michael, went to the Home Depot store in Waite Park, Minnesota to rent an insulation machine to blow insulation in the attic of his garage and home at 3113 Dolores Drive, St. Cloud, Minnesota 56303.

5.      Plaintiff spoke to a Home Depot employee who informed him that Home Depot would rent out an AttiCat Expanding Blown-In Insulation System, Home Depot part number 1026602970 ("AttiCat") to Plaintiff for one day for $107.63.

6.      Upon information and belief, the AttiCat is designed to blow insulation throughout the attic of a home by breaking up insulation, fluffing it, and adding air pockets to the insulation. The AttiCat generally consists of a blowing machine and a hose. The blowing machine has a feeder for insulation on the top of the machine where the operator inserts half-bags of insulation, and the plastic packaging around the insulation is cut with the machine's autocutter inside of the feeder to release insulation into agitator bars in the base of the machine. The autocutter, when installed properly, utilizes a blade guard to prevent the utility blade from being exposed. The insulation is then broken apart and fed into the machine's hose by a blower.

7.      Upon information and belief, the AttiCat was designed, tested, produced, processed, promoted, labeled, marketed, advertised, distributed, and sold by Owens Corning to distributors including, but not limited to, Home Depot in Waite Park.

8.      Upon information and belief, Home Depot in Waite Park exercises significant control over the sale and rental of AttiCat insulation machines to consumers, including, but not

limited to, maintaining, cleaning, inspecting, testing, and confirming that each machine is not sold or rented in a defective condition which is unreasonably dangerous for its intended use.

9. Plaintiff rented the AttiCat from Home Depot by signing a rental agreement, and agreeing to return the AttiCat to Home Depot on October 26, 2020, on or before 3:42 p.m.

10. Plaintiff brought the AttiCat back to his residence, unloaded the machine from his truck with Michael, attached the hose to the blowing machine, snaked the hose into the attic, and, at approximately 5:15 p.m. on October 25, 2020, plugged the machine in and began operating it. Plaintiff fed insulation into the AttiCat's feeder and Michael operated the hose.

11. Plaintiff used the AttiCat insulation machine properly, as intended, and in a way that Owens Corning and Home Depot could reasonably have anticipated.

12. After approximately one hour of operating the AttiCat, as Plaintiff was loading insulation into the AttiCat's feeder, the AttiCat's utility knife blade sliced his right inner forearm.

13. There were no warning signs or labels posted on the machine indicating that Plaintiff should take caution or should be aware of the utility knife blade when loading insulation into the feeder.

14. After the incident, Plaintiff went to the CentraCare Urgent Care Center to have his injury treated. Plaintiff sustained a four-centimeter laceration that required 12 stitches to repair.

15. While Plaintiff's injury was being treated, Michael took pictures of the blade that sliced Plaintiff's forearm. Michael returned the AttiCat to Home Depot in Waite Park and obtained a replacement machine that same evening. A photograph of the blade on the AttiCat that sliced Plaintiff's forearm reveals that the utility knife blade was not properly protected by the blade guard.



16.     After obtaining a replacement AttiCat from Home Depot, Michael and Plaintiff took pictures of the blade inside of the new AttiCat. A photograph of the blade on the new AttiCat shows the blade and the blade guard when properly installed.



17.     The AttiCat Plaintiff rented was manufactured and sold and/or distributed in a defective condition that was unreasonably dangerous for its intended use by Owens Corning at the time of sale and/or distribution and when it left Owens Corning's control.

18.     The AttiCat Plaintiff rented was in a defective condition that was unreasonably dangerous for its intended use at the time of rental to Plaintiff when it left Home Depot's control.

19.     As a direct and proximate result of the defective and unreasonably dangerous condition of the AttiCat, Plaintiff was injured.

20. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar.

## JURISDICTION AND VENUE

21. Jurisdiction is proper before this Court pursuant to Minn. Stat. § 484.01.

22. Venue is proper in Stearns County pursuant to Minn. Stat. § 542.01.

## COUNT ONE – STRICT LIABILITY – HOME DEPOT

23. Plaintiff reincorporates and re-alleges each and every allegation of this Complaint as is set forth in full in this cause of action.

24. Home Depot exercises significant control over the sale and rental of AttiCat insulation machines to consumers, including, but not limited to, maintaining, cleaning, inspecting, testing, training employees, and confirming that each machine is not sold or rented in a defective condition which is unreasonably dangerous for its intended use.

25. The AttiCat rented by Plaintiff was a product in a defective condition that was unreasonably dangerous for its intended use at the time of sale and when it left Home Depot's control, including, but not limited to, having a defective autocutter, blade, blade guard, and/or insufficient warnings that presented a substantial risk of injury to consumers, including Plaintiff.

26. The defect in the AttiCat was caused by the way it was assembled, inspected, tested, labeled, or otherwise by Home Depot.

27. Plaintiff used the AttiCat as intended in a way that Home Depot could reasonably have anticipated.

28. As a direct and proximate result of the defective and unreasonably dangerous condition of the AttiCat, Plaintiff was injured.

29. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar, entitling him to an award of damages in excess of $50,000.

## COUNT TWO – NEGLIGENCE – HOME DEPOT

30. Plaintiff reincorporates and re-alleges each and every allegation of this Complaint as is set forth in full in this cause of action.

31. Home Depot rented the AttiCat to Plaintiff for $107.63 for Plaintiff to use at his home.

32. Home Depot had a duty to use reasonable care to make sure that the AttiCat was safe when it was used as intended or in a way that could have reasonably been anticipated.

33. The AttiCat should have been free from defects that Home Depot knew about or should have known about upon reasonable testing, inspection, preparation, assembly, training of employees, and/or maintenance of the AttiCat.

34. Home Depot failed to exercise reasonable care to make the AttiCat safe for Plaintiff's intended and known use.

35. As a direct and proximate result of Home Depot's negligence, Plaintiff was injured.

36. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand

numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar, entitling him to an award of damages in excess of $50,000.

### COUNT THREE – BREACH OF WARRANTY – HOME DEPOT

37. Plaintiff reincorporates and re-alleges each and every allegation of this Complaint as is set forth in full in this cause of action.

38. Plaintiff rented the AttiCat from Home Depot for the purpose of safely insulating his attic. Plaintiff is a normal renter who made ordinary use of the AttiCat insulation machine he rented from Home Depot.

39. Home Depot knew and/or had reason to know the particular purpose the AttiCat was being used for.

40. Home Depot knew and/or had reason to know that Plaintiff would and did rely on Home Depot's skill and judgment in selecting or providing a product suitable for that purpose.

41. Plaintiff relied on Home Depot's skill and/or judgment in selecting and/or providing a product suitable for his intended purpose.

42. The AttiCat was not of merchantable quality nor fit for the particular purpose for which such equipment was manufactured, designed, tested, assembled, inspected, prepared, sold, and/or supplied. Home Depot made express and/or implied warranties of fitness and merchantability with respect to the AttiCat, which warranties Home Depot breached.

43. As a direct and proximate result of the breaches of the warranties by Home Depot, Plaintiff suffered the injuries alleged.

44. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand

numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar, entitling him to an award of damages in excess of $50,000.

### COUNT FOUR – STRICT LIABILITY – OWENS CORNING

45. Plaintiff reincorporates and re-alleges each and every allegation of this Complaint as is set forth in full in this cause of action.

46. Upon information and belief, AttiCat insulation machines were designed, tested, produced, processed, promoted, labeled, marketed, advertised, distributed, assembled, and sold and/or distributed by Owens Corning to distributors including, but not limited to, Home Depot in Waite Park.

47. At all times relevant hereto, and at the time the AttiCat machine, rented by Plaintiff, left the control of Owens Corning, the AttiCat was unreasonably dangerous for its intended use in one or more of the following ways:

    a. It contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks associated with the subject product, including but not limited to the risk of being cut and injured by the machine's utility blade.

    b. Information provided by Owens Corning to sellers and consumers concerning the safety of the AttiCat did not accurately reflect the serious adverse effects consumers, including Plaintiff, could suffer. These risks and dangers were known or knowable by Owens Corning at the time of distribution and use by Plaintiff. Owens Corning knew or should have known that the warnings that were given failed to properly warn of the risks of injury associated with the AttiCat and the AttiCat's utility blade.

  c. The AttiCat was defective in its design in that it was not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

  d. The AttiCat was and is unreasonably dangerous in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiff, when it was used properly, as intended, and in a reasonably foreseeable manner.

  e. The AttiCat was and is unreasonably dangerous and defective in design for its intended use in that, when it left the hands of Owens Corning, it posed a serious risk of injury which could have been reduced or avoided by the adoption of a feasible reasonable alternative design.

  f. The AttiCat rented by Plaintiff was a product in a defective condition that was unreasonably dangerous for its intended use, including, but not limited to, having a defective autocutter, blade, and/or blade guard that presented a substantial risk of injury to consumers, including Plaintiff.

48. Had adequate warnings and/or instructions been provided, Plaintiff would not have been injured by the AttiCat. Owens Corning failed to provide warnings of such risks and dangers associated with the AttiCat to the Plaintiff and sellers described herein.

49. Plaintiff reasonably relied upon the skill, superior knowledge, and judgment of Owens Corning.

50. Owens Corning has a continuing duty to warn consumers, including Plaintiff, of the dangers associated with the subject product.

51. The AttiCat insulation machine was expected to reach, and did reach, Plaintiff without substantial change in the defective and unreasonably dangerous condition in which it

was manufactured, sold, and/or distributed by Owens Corning. Plaintiff received and utilized the AttiCat insulation machine in a foreseeable manner as normally intended, recommended, promoted, and marketed by Owens Corning.

52. As a direct and proximate result of the AttiCat's defects, including but not limited to its inadequate warnings, defective design, and/or its unreasonably dangerous condition, Plaintiff was injured.

53. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar, entitling him to an award of damages in excess of $50,000.

## COUNT FIVE – NEGLIGENCE – OWENS CORNING

54. Plaintiff reincorporates and re-alleges each and every allegation of this Complaint as is set forth in full in this cause of action.

55. At all times relevant to this cause of action, Owens Corning was in the business of designing, developing, manufacturing, marketing, testing, inspecting, selling and/or distributing AttiCat insulation machines.

56. As all times relevant hereto, Owens Corning was under a duty to act reasonably to design, develop, manufacture, market, sell and/or distribute a product that did not present an unreasonable risk of harm or injury to consumers, including Plaintiff.

57. The AttiCat should have been free from defects that Owens Corning knew about or should have known about upon reasonable designing, testing, inspection, preparation, assembly, manufacturing, training of employees, maintenance, or otherwise of the AttiCat.

58. Owens Corning failed to exercise reasonable care to make the AttiCat Plaintiff rented safe for Plaintiff's intended and known use.

59. As a direct and proximate result of Owens Corning's negligence, Plaintiff was injured.

60. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar, entitling him to an award of damages in excess of $50,000.

### COUNT SIX – BREACH OF WARRANTY – OWENS CORNING

61. Plaintiff reincorporates and re-alleges each and every allegation of this Complaint as is set forth in full in this cause of action.

62. Plaintiff rented the AttiCat for the purpose of safely insulating his attic. Plaintiff is a normal renter who made ordinary use of the AttiCat insulation machine.

63. Owens Corning knew and/or had reason to know the particular purpose the AttiCat was being used for.

64. Owens Corning knew and/or had reason to know that Plaintiff would and did rely on Owens Corning's skill and judgment in selecting or providing a product suitable for that purpose.

65. Plaintiff relied on Owens Corning's skill and/or judgment in selecting and/or providing a product suitable for his intended purpose.

66. The AttiCat was not of merchantable quality nor fit for the particular purpose for which such equipment was manufactured, designed, assembled, tested, inspected, prepared, sold,

and/or supplied. Owens Corning made express and/or implied warranties of fitness and merchantability with respect to the AttiCat, which warranties Owens Corning breached.

67. As a direct and proximate result of the breaches of the warranties by Owens Corning, Plaintiff suffered the injuries alleged.

68. As a direct and proximate result of the injury, Plaintiff has, and continues to suffer, serious physical and emotional injuries including, but not limited to, nerve damage, hand numbness, tingling, ongoing physical pain, loss of feeling in his fingers, and embarrassment from the location of the scar, entitling him to an award of damages in excess of $50,000.

**WHEREFORE**, Plaintiff, Nicholas Terhune, demands judgment as follows:

1. In favor of Plaintiff, and against Home Depot and Owens Corning, jointly and severally, in an amount in excess of $50,000, plus pre-verdict interest;

2. For Plaintiff's costs and disbursements incurred herein; and

3. For such other and further relief as the Court deems just and equitable.

Dated: December 17, 2021

RINKE NOONAN, LTD.

 */s/ Tonya Hinkemeyer*
Tonya T. Hinkemeyer (#0312113)
Suite 300 US Bank Plaza Building
1015 W. St. Germain St.
P.O. Box 1497
St. Cloud, MN  56302-1497
(320) 251-6700
(320) 656-3500 fax
Email: Thinkemeyer@RinkeNoonan.com

ATTORNEYS FOR PLAINTIFF

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that pursuant to Minnesota Statutes Section 549.211, sanctions may be awarded to the party or parties against whom the allegations of this pleading are asserted.

*/s/ Tonya Hinkemeyer*
Tonya T. Hinkemeyer
